Good morning, and may it please the Court. Raven Lominack here on behalf of U.S. Fibers. The Board failed to ensure that employees at U.S. Fibers Trenton, South Carolina plant voted for a union representation in an atmosphere that was free of fear, coercion, and confusion. The Board and the union want this Court to focus on only one of the two principal issues in this case, whether the putative supervisors are supervisors under Section 211 of the Act. But an equally important issue, and the issue that really gets to the core of the Board's obligation to ensure a fair election, is whether the conduct of these individuals warrants setting aside the election regardless of their status as statutory supervisors. Employees were specifically told six months before the election that Jose Lau, David Martinez, Eduardo Torres, and Eduardo Sanchez were their supervisors. Over the ensuing months, however, these individuals handed out union authorization cards and encouraged employees to sign them, they wore union t-shirts and hats, they attended and spoke at union meetings, and they told employees that bad things were going to happen if they didn't vote for the union. Recall that 90% of this workforce spoke only Spanish. The plant manager spoke Korean and English. The two production managers, who were the only other level of supervision at the plant, spoke only Korean. The four supervisors spoke Spanish and some English. Thus, they were the only reliable authority for the employees to know when, where, and how to do their job, yet they were campaigning for a union. Talk about an atmosphere of fear, coercion, and confusion surrounding an election. Contrary to what the board and the union want this court to believe, that fear, coercion, and confusion that was created by those individuals doesn't disappear simply because they might not have the statutory authority under Section 211 of the Act to be supervisors. What are the specific statements that you maintain made this such a coercive environment? Tell me, what is this evidence? Your Honor, not only is there coercive statements, and that's in the record as far as these individuals making statements about lots of changes are going to be made within the company, the union is best for all, and if you don't vote for the union, the company is going to let you go to think well about it before you vote. Those are coercive statements that were made, but it's not just the coercive statements that were made, it was the overall conduct of these individuals throughout the period. I'm just trying to walk down that path with you to understand. You say the company would let you go if you don't join the union. Let's take it somewhere for me, other than the company would let you go. I mean, that's probably something everybody says, if you don't... If you don't support the union? Yeah, the company could let you go. Well, in fact, wouldn't the opposite be more likely? The company's going to let you go if you... Well, it's all about the context, and so, again, there's testimony in the record that employees felt pressured. They felt fear and coercion based on the conduct of these individuals speaking, not only making statements like that, but also speaking at union meetings, standing up in front of employees and encouraging them and telling them to vote for the union. The notion that this type of conduct... Who were these statements made to? Because I understand it was to a relatively small group of people. No, Your Honor, it was made to a number of employees, and those employees spread these statements throughout, and there's evidence that there were upwards of 20 employees at the meetings. So they say a statement, somebody's going to get fired, which sounds like it's... Somebody could get fired, or something like probably could get fired, I think is the statement. Somebody probably could get fired, or a company could let you go. And they say it to a group of employees, I think they say 68. And then you're saying it takes on an effect, that that 68 is then empowered, sort of what we used to call a military force multiplied, so now they can go out and infect everybody. It's like a disease. Absolutely. So somebody sees these 68, and now they've gone out and infected the whole area. Absolutely, Your Honor. And these guys who said it in the first instance, you can connect their statement with the ultimate illness. Absolutely, Your Honor, the board does it all the time when they're examining employer misconduct that results in elections. What they said is the company would let them go, or somebody's probably getting fired. Your Honor, the testimony in at least one example is the union is best for all, and if you don't vote for the union, the company would let us go. If employees don't sign this authorization form, it would make it easier for the company to let employees go. But the company was opposing the unions. That just sounds so counterintuitive. Why would they be concerned about that? Because, Your Honor, absolutely they were concerned because the conduct of these individuals was critical to influencing these employees' votes because these individuals, whether or not their authority rises to the level of Section 211 status, their conduct was undisputedly on the basis of them being supervisors. The employees understood these individuals to be their supervisors. They were told by the company that these individuals were your supervisors. The record is undisputed on that point. And that's the critical error in this case. What the board said is, first of all, the board recognized that the regional director completely missed this issue. The board said only that there were some statements by Martinez and Lau that essentially employees might lose their jobs if they did not support the union. The board then cited its Durlam case for the proposition that these types of statements are not objectionable under the standard of third-party conduct. No, I mean, they classify the statements as threats of job loss, but they said basically that these threats made by a rank-and-file employee to another are not objectionable. And your point is that we're not dealing with rank-and-file employees even if they're not supervisors under a strict reading of the statute. Absolutely, Your Honor. That is absolutely correct. It was clear, reversible error for the board to chalk this up to being nothing more than rank-and-file employees making statements to other rank-and-file employees. So that if we disagree with you based on the standard of review that the issue of the supervisory status, if we disagree with you on that, what happens to your claim of the improper conduct? What is left standing? That's the absolute second issue that's ignored essentially by the board and where their key error is here. They dismissed that whole point of it in a footnote. What if, and what I'm trying to ask, trying to understand here, because you seem to be concentrating a lot on the alleged misconduct, what if because of the extremely deferential standard of review here, even if we would have decided in the first instance that these were supervisors, what if we are bound by the standard of review to go against you? What is the trickle-down effect or what is the consequential effect on your claim of improper conduct? If they are deemed to not be Section 211 supervisors, the board's critical error was analogizing this to the Dura-Lam case where the individuals were simply rank-and-file employees. What were they then? If they were not supervisors based on the standard of review, what were they? There's an unquestionable middle ground between Section 211 supervisor and rank-and-file employee when it comes to examining conduct that affects an election. In fact, the board has no trouble recognizing this when it's employer misconduct involved. In the Mid-South Drywall case, for example, the board overturned an election when a lead person suggested to employees that if it were his business, he would close the place down if a union got in. Well, the lead person was undisputedly not a Section 211 supervisor, but the board also noted that he wasn't a rank-and-file employee either. This was because the employer put the employee or that individual in a position where employees reasonably believed that he was acting on behalf of management. You're saying the evidence is uncontroverted here that they were lead employees? What I'm saying is if you disagree with our point that they are Section 211 supervisors, which we've obviously briefed that extensively and stand by those points, but even if you find that they are not Section 211 supervisors, the court cannot support or find merit to the board's decision where the board applied the wrong standard for analyzing this. Instead of looking at the context, the confusion that was created here, which the third party standard, when you look at whether conduct by a third party creates a standard or creates an atmosphere of confusion, coercion, and fear among employees, the board looked at none of that. They failed to look at the fact that on the one hand, these individuals were telling employees where to go, what to do, how to do their jobs. They spoke only Spanish. But the standard, though, for improper conduct is much lower if they aren't a supervisor. The standard is incredibly low, it seems to me. Actually, I was sort of surprised. It's just that the evidence shows that a fair election was impossible, right? Well, no, Your Honor. Respectfully, the standard is whether or not confusion . . . Has to be so aggravated that a fair election is impossible. Isn't that correct? Well, the board has always . . . If they aren't supervisors. The board has always recognized that as being the standard, whether there's election misconduct by an employer or not. But the board, in third-party cases . . . Do you agree that in a third-party case where you don't have a supervisory status, that the standard is much lower for upholding an election? Isn't that true? I absolutely agree with that, Your Honor. The difference here, though, is that the standard is not impossible. There is clear conduct. And the board . . . Not only that, the board didn't even address it. They brushed it off in a footnote. And it was based solely on their construction of a couple of comments. There was much more than that. These employees deserve an opportunity to vote in an election where there's an atmosphere that's free of confusion and coercion. Whether or not these individuals are supervisors, that atmosphere did not exist, number one. And number two, the board did not fulfill its statutory obligation of ensuring that it existed. The board has no problems overturning an election with even the slightest bit of misconduct by an employer representative, even one who's not a 211 supervisor. There's a double . . . What about a case you can find like this one, that we're using a third-party standard and the basis of the threats where you can lose your job or you can be fired? We got a case like that anywhere? Well, Your Honor, I think you might be testing me here because you issued an opinion a couple of years ago in the Ashland v. NLRB case. And in that case, Your Honor, I respectfully recognize that in that case the confusion was not so substantial because the employer had an opportunity to set the record straight. In this case, Your Honor, the individuals were the only reliable authority for these employees to know what to do, when to do it, and how to do it, how to do their job. And the company was litigating the status of their Section 211 . . . litigating their Section 211 status at that time, at the pre-election hearing, throughout. So it's not as if the company could just tell them, no, you can't do that. That was an issue that was up in the air. So this isn't a case that just fits in that narrow line of cases where third-party conduct is excusable because, again, the company had plenty of opportunity to tell employees what was right and the individuals were just employees who were acting on their own behalf. These individuals dictated and had authority over the terms and conditions of these individuals' employment. The employees deserve to vote in an election where their supervisors, again, are not telling them, on the one hand, here's how you do your job, here's when you need to be here, if you want some time off, come ask me, I'm going to grant you some overtime. On the one hand, telling them that, and on the other hand, wearing union T-shirts, giving out authorization cards and telling them to support a union. That is the epitome of a confused, fearful and coerced atmosphere. And for those reasons, Your Honor, we respectfully request that you grant our petition for review. Thank you. All right, thank you. Ms. Boydo. As I understand, you're sharing your time then with Ms. Patios? Yes, she will have five minutes of my time. Okay, thank you. Good morning, Your Honors. Substantial evidence supports the Board's finding that the company failed to meet its burden of proving that these four individuals are exempt from the broad definition of employee under the National Labor Relations Act and that they exercise any of the supervisory functions that are enumerated in Section 211 of the Act using independent judgment. As a result, there is no third rail. Either these individuals are supervisors or they are employees. And as employees, the company alleged only that two individuals... Mr. Lomanak says that there is a third rail when the employer is engaged in these kinds of activities. So why shouldn't it apply equally to... in this context? Well, there's a test for when there's misconduct by supervisors. That's the Harborside test. It's a multi-factor test. And one of the factors under that is the degree of authority that the supervisor exercises. But the Board found that the company failed to meet its burden of proving that any of these individuals were statutory supervisors. And the company had the burden of showing that by a preponderance of the evidence. I understand that, but Mr. Lomanak says there's a middle ground here that the fact that they weren't statutory supervisors doesn't suggest that they did not have some kind of authority over these employees and therefore were able to exercise some will and dominance with respect to the vote. With all due respect, Your Honor, the test, as Judge Keenan noted, for conduct by third parties is whether the alleged misconduct is so aggravated that it... Conduct by third parties or conduct by rank-and-file employees? Well, someone who's not an agent of the employer. Well, that's a different test than being a statutory supervisor, right? Well, a supervisor or an agent of the employer. Why wouldn't these individuals be classified as agents? Well, that wasn't alleged. The allegation was that they were supervisors and, again, the company failed to meet its burden of establishing... Do you disagree that there's something more than just rank-and-file employees? Well, there are lead persons and if you look at the legislative history quoted in Bell Aerospace, there's a distinction between individuals with genuine managerial prerogatives and straw bosses, lead men, set-up men who are considered employees under the Act and there is no third rail. There is only the test that applies to individuals who are exempt from the definition of employee which would be supervisors and there's a test for conduct during an election that applies to individuals who are employees and if the court agrees with the board that substantial evidence supports the finding that the company didn't meet its burden of proving these individuals are exempt then they're employees and the applicable test is the one articulated in Westwood Horizons and under that test statements that even by lead persons or high lead persons but just not statutory supervisors that individuals might lose their jobs if they don't support the union that is not grounds for setting aside an election and disturbing Unreasonable, following up on Judge Diaz's question that when we're looking at the conduct of the individuals to determine whether it does meet the standard of being so egregious that it makes it possible it doesn't seem far-fetched that one would take in consideration the employer and maybe things about that employee things about that employee and if in this instance they are supervisors in name or whatever or they pass through information and then they give these quote threats or make coercive statements why would that not factor in in at least the determination of whether their conduct rather than just looking at it from a totally objective it's just an employee it doesn't matter what they do in a place and when in reality that cannot be true I mean the guy who is probably parking their cars out in the lot there may have a different position than the guy who's telling you what time you go to work and what time you get off and he reports to the other people don't you think that's different With all due respect Your honor the board has broad discretion over establishing the ground rules for elections and it's been this board settled test that either individuals are employees or a party has shown that they're exempt from the definition But the board does also in this rule says it's the conduct that we look at and conduct is not just the employees it's who's doing it and then you've got to look at the actual conduct for the guy who's and I use this the guy parking the cars could have as much power as anybody but I use that as an example he's out there parking the cars he doesn't even see who's in here from day to day but here's a guy who's standing over him taking notes on him checking on him what time you go to work and at least he's a pass through and every now and then somebody gets fired when he says you know this guy ought to be fired and it trickles on up and he's fired he doesn't have the authority himself we'll accept that at least for purposes of my discussion with you I mean it just seems and that doesn't mean you lose it just is an acknowledgement that yeah there could be some additional things that you consider but even in this instance it would not apply. Well to be sure there are actions that employees can take that would be so aggravated as to create a general atmosphere of fear and reprisal as to make a free election impossible I mean that certainly is true and that has happened but the statements here by these two individuals that employees might lose their jobs does not meet that standard by a long shot and I mean the company can't have it both ways either they establish that these individuals are exempt from the broad definition of employees or they don't otherwise an employer could just be supervisors and create that misimpression among the employees and that would carry the day and make any lead person's statement objectionable and that's simply not the case It would still be a high burden I don't care who it is he could actually be a statutory employee that's a very high burden if it's a third party not in this instance Well an employee is considered a third party a party would be a supervisor or the union Does the court have any questions about the supervisory status issue because my opponent didn't discuss that and I would have to clarify if you do Well it seems to me that this was a close case on the supervisory status issue and we are perhaps bound by the standard of review but the close nature of the facts in many respects may or may not bear on the second issue and that's what I haven't really heard clearly from you I understand your substantial evidence argument the broad deference we give to the board but if the facts were very close irrespective of that deference we give on the first issue how does that weigh into our analysis and I think that's what Judge Wynn was driving at a lot How does that weigh into our analysis I understand that the employees are third parties, there's a much lesser standard for third parties but what if the evidence on the ground was pretty close I mean these guys recommended raises 90% of the time it was followed they made assignments of employee work schedules, they did a whole lot so does that affect our analysis or is it simply black and white if you're third party if you're not a supervisor It's black and white your honor It does not affect your analysis Now if these individuals were supervisors and the board had been called upon to analyze their conduct under the harborside standard which governs supervisory conduct then that would absolutely be a factor in the board's analysis, the degree of supervisory function that's committed to the individuals who engaged in alleged misconduct but once the line is crossed and it's determined that substantial evidence supports the board's finding that the company failed to meet its burden of establishing supervisory status then they are employees they may be lead persons but it's one standard whether they're a rank and file or a lead person and it's a very difficult standard to meet and I submit that the company failed by a long shot to meet that standard Is there any case law that says it's the same standard for lead persons as it is for rank and file employees Your honor I can't think of one off the top of my head but I did just litigate this issue in a DC circuit case and I'm sorry I can't give you but it's a very common assertion that we see being raised by employers who aren't able to meet their burden of proving supervisory status Is there any case law in the courts of appeals that directly address this issue Not that I'm aware of but there certainly are any number of cases where individuals who are lead persons make statements and not shown to be exempt supervisors make statements that are alleged to be objectionable Well if the court doesn't have any further questions  Thank you Ms. Parias Good morning your honors I do think that the Westwood Horizons Hotel even though it doesn't directly address this third rail issue between employee and supervisor is flexible enough to take into account who is making the threat. It looks at the nature of the threat, whether the threat encompassed the entire bargaining unit whether the person making the threat was actually capable of carrying it out and I think the other issue here is that that the board in this case engaged in that kind of issue on a footnote It disposed of the issue on a footnote I don't know if they looked at it but that is the standard, that is the law on the board to follow this test and I think the other issue here is that there is a lack of evidence in the record about how widespread the threat was and about how coerced the employees felt. What we have in the record is one employee, Ignacio Bamaca saying he feared losing his job because his purported supervisor David Martinez said if we support the company they could let us go. Something that happens in elections is that employees talk to each other and one thing that they talk about often is that if we have a union we have more protections, it's harder for the company to fire us I also think that there was no in the request for review to the board, there was no mention of the distribution of Jose Lalo of the car to employees who did not work on his team in his department underneath him There was record evidence saying that the employee who saw his purported supervisor wearing a t-shirt that that t-shirt wearing had no effect on him. So I think regardless of whether I mean, I don't think the employees or supervisors if they are just employees, I don't think there's enough evidence to show that there was such a general atmosphere of fear and reprisal to find that the free election was impossible In terms of the assignment of work and the supervisory status of these employees I don't think it is as close as you Judge Keenan are saying that it is The burden is on the party asserting the supervisory status and if there's a lack of evidence or conclusory evidence or contradictory evidence that has to be held against that party and it doesn't carry the burden. In terms of assigning the work and making the schedules it's clear that Martinez and Torres did not make the schedules. It's the managers who made their schedules. They did not assign work. They did not use independent judgment in designating an employee to a place or time. In terms of Lal and Sanchez Lal testified that his manager, Zhang, gave him a list with the schedule of work and where they are going to work so everybody knows what to do. Sanchez himself testified that he consulted with Zhang when he moved employees so even though there is some evidence of an assignment of duties, that evidence is either contradicted or conclusory or lacking. The employees in the manufacturing environment if we look at Kraft Metals when employees rotate through and generally perform the same job or repetitive duties they do so without independent judgment. All the employer in this case had to do was satisfy one of the tests and how do you distinguish the Metro transport case with respect to discipline from this case? With respect to discipline in this case bear with me in Metropolitan Transportation the supervisor was said you can discipline employees without consulting a supervisor or having any instruction on specific violations. What we have here though is that when these purported supervisors are faced with specific violations safety requirements that sort of thing they have the ability to issue discipline. We only have evidence of one of them issuing discipline without being directly ordered to by their manager. That's with Eduardo Sanchez issuing a warning for the failure to check product. But as the regional director found there's no evidence of the discretion to use. We don't know if there's a checklist saying is the product XYZ and the employee failed to fill that out and that's why he got the discipline. If that's the case then that's not a use of independent judgment. Because there's evidence is lacking in being able to figure out if this discipline was issued with the independent judgment it has to be held against the party asserting the supervisory status. In terms of the raises, yes there's a conclusory statement saying that 90% of the time raises were awarded as the purported supervisors. But there's no evidence of what the raises actually were. All we have is a conclusion that's not backed up and it is actually contradicted by other employees saying well we didn't actually, they didn't get the raise that I recommended. So it's for those reasons that we ask that the court enforce the board's order. Thank you. Do you have rebuttal? Rebuttal? The board and the union suggest that the employer wants to have it both ways. The employees have the right to have it both ways. They have the right to vote for union representation in an atmosphere that does not include coercion, confusion and fear. We can't get hung up on this section 211 status like it's a black or white issue. It's fully briefed and as explained today, it's not a black or white issue. They have the statutory right to vote in an atmosphere that's free of fear, coercion and confusion. The board as your honor pointed out did not engage in that analysis. Westwood does recognize that under the third party conduct standard, conduct one of the elements is whether or not the individuals are capable of carrying out such actions. The board does not. All of this occurred in a plant that was hampered by language barriers. The standard for analyzing third party conducts expressly considers whether there's an atmosphere of confusion. Yet the board says nothing about these facts or references this part of the standard. Instead, it focuses exclusively on whether the statements were coercive and it considers them to be made by rank and file employees. This was an error that we respectfully request this court to consider. I understand a lot of them spoke Spanish and then you had some Korean but to what extent does that factor in either analysis? I mean, you haven't made an argument that there's a cultural understanding of what a supervisor is because this group is different from the other. I'm trying to wrap around what the language barrier would have because it wasn't a barrier to the people who could speak it. They were speaking pretty well. Your Honor, the plant manager spoke only Korean and English. The two production managers who the board and the union persist are the true 211 supervisors in this case only spoke Korean. That next level of supervision that was incorporated here the four individuals who spoke Spanish and English was essential for the employees. Undisputedly 90% of them spoke Spanish to understand and know what to do and where to do it and how to do it. I'm sorry? They did not speak Korean. They did not speak Korean. They had no bilingual ones. It seems like to me it would strengthen your supervisor argument tremendously if you had someone who was at least bilingual or trilingual there who you say they communicated and connected on both levels but they are only communicating on this level and apparently somebody had to translate to them That's right. That's right and your Honor this is a small plant at that time quick growth over the year leading up to the election in Trenton, South Carolina a rural area where there was only at the time of the election around 140 employees and so you have a plant manager who speaks English and you have supervisors who can understand and speak English and they served as that basis of level of supervision but to specifically address your point the reason that that's important is because it's another factor to consider that the board did not consider but it's another factor to consider in analyzing the overall context of this election and the atmosphere and whether it was confused and that adds to that element of confusion. Thank you. Thank you, Your Honor.
judges: Barbara Milano Keenan, James A. Wynn, Jr., Albert Diaz